UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
BARRY YORKE,

                    Petitioner,

                                        MEMORANDUM AND ORDER
          -against-                     19-CV-1452(JS)

JAMIE LAMANNA,

                    Respondent.
----------------------------------X
APPEARANCES
For Petitioner:     Barry Yorke, Pro Se
                    #14-A-2616
                    Green Haven Correctional Facility
                    P.O. Box 4000
                    Stormville, New York  12582

For Respondent:     Thomas C. Costello, Esq.
                    Suffolk County District Attorney's Office
                    200 Center Drive
                    Riverhead, New York  11901

SEYBERT, District Judge:

          Following a state court jury trial on firearm charges,
Petitioner was convicted of two counts of New York Penal Law §
265.11(1), Criminal Sale of a Firearm in the Third Degree, and two
counts of New York Penal Law § 265.11(2), Criminal Sale of a
Firearm in the Third Degree (hereafter, the "Firearms
Conviction").  Before the Court is the petition of pro se
Petitioner Barry Yorke ("Petitioner") for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254 (hereafter, the "Petition"), arising
out of his Firearms Conviction; he raises a single claim of
ineffective assistance of counsel. (Petition, ECF No. 1, at ECF

p. 5.)   Respondent Jamie LaManna ("Respondent") opposes the Petition.  (See Opp'n, ECF No. 8.[1])  For the following reasons, the Petition is DENIED in its entirety.

BACKGROUND

I.   The Offense Conduct

Detective Thomas Tzimorotas ("Tzimorotas") of the District Attorney's Special Investigations Bureau, Firearms Suppression Unit, worked with confidential informant Saquan Williams,[2] also known as "Styles", between November 2010 and October 2011.  (See Tr.[3] 99:21-100:6, 100:17-101:9.)  Williams knew Petitioner.  In March 2011, after Petitioner told Williams that he

---

[1]  Although given the opportunity to do so, Petitioner did not file a reply.  (See Aug. 15, 2019 Order to Show Cause, ECF No. ¶6 ("Petitioner, within 20 days of receipt by him of a copy of the return, shall file a reply, if any, with the clerk of this Court."); cf. Case Docket, in toto.)

[2]  Following his narcotics conviction in October 2009, Williams became a registered confidential informant in February 2010. (See Tr. 183:7-25, 185:4-186:2, 648:6-11.)

[3]  Petitioner's trial commenced on February 6, 2014 and ended on February 28, 2014.  The transcripts of the trial are found at:
    (a)  ECF No. 9-2 (Feb. 6, 7, and 10, 2014);
    (b)  ECF No. 9-3 (Feb. 14, 18, 19, and 20, 2014); and
    (c)  ECF No. 9-4 (Feb. 24-28, 2014).
The pages of these transcripts are numbered sequentially.  In addition, the transcript of Petitioner's sentencing hearing is found at ECF No. 9-1, pp. 3-11.  Herein, the Court will cite to the internal pages of the various transcripts using the following format:  "(Tr. [page number]:[line number(s)])" or "(Sent'g Tr. [page number]:[line number(s)])".

(Petitioner) had a handgun for sale, Williams conveyed that information to Tzimorotas.  (<u>See</u> Tr. 155:12-20.)

Thereafter, Tzimorotas had Williams purchase or attempt to purchase firearms from Petitioner on three occasions:

(1) On or around March 30, 2011, when Tzimorotas and a team of other detectives and officers (hereafter, the "Team") provided Williams, who was wired, with the purchase money to buy an H&K 9-millimeter pistol from Petitioner, which purchase occurred (<u>see</u> Tr. 102:12-103:14; 107:3-15; 113:13-19; 114:3-21; 116:13-15; 116:23-117:11; 119:11-15; 621:13-22);

(2) On July 18, 2011, when Tzimorotas and the Team provided Williams with a "bait car" -- wired for sound and video recording -- to meet Petitioner and purchase another firearm, which purchase did not occur (<u>see</u> Tr. 131:16-24; 132:6-16; 134:22-135:7; 135:11-13); and

(3) On July 20, 2011, when Tzimorotas and the Team again provided Williams with the bait car, which he used to meet Petitioner; on that occasion Williams purchased a .357 revolver from Petitioner (<u>see</u> Tr. 136:12-25; 138:12-16; 138:24-139:17; 139:24:140:6).

On February 9, 2012, Petitioner was arrested for the March 30, 2011 and July 20, 2011 firearm sales.  (Tr. 637:13-19.) At that time, Petitioner was also a suspect in a shooting-murder;

he was indicted on murder charges under Indictment Number 451-12 on February 15, 2012 (hereafter, the "Murder Case"). (See Costello Decl., ECF No. 8, ¶4.)  In a separate indictment, No. 438-12 (hereafter, the "Firearms Indictment"), Petitioner was charged in the subject underlying firearms sale case (hereafter, the "Firearms Case"). (See Tr. 2:25-3:5.)  He also had a pending narcotics case against him brought under another indictment, No. 2790-11 (hereafter, the "Drug Case"). (See Tr. 2:25-3:5-8; 9:12-14.)

## II. The Murder Trial

Petitioner's Murder Trial resulted in a mistrial on October 25, 2013.  During that Trial, Petitioner testified in his own defense and denied having sold the two firearms on March 30, 2011 and July 20, 2011; he also denied ever having possessed a firearm.  (See Costello Decl. ¶5.)

## III. The Firearms Trial

On February 6, 2014, before his scheduled retrial in the Murder Case (hereafter, the "Retrial"), Petitioner's trial in the Firearms Case commenced.[4]  (See id. at ¶6.)  At the outset, the trial court reviewed Petitioner's maximum exposure if convicted after trial, i.e., 14 years' imprisonment and three years' post-release supervision.  (See Tr. 3:9-23.)  After Petitioner

---

[4] The Drug Case was held in abeyance pending the resolution of the Firearms Case. (See Tr. 3:5-8.)

articulated his understanding that a guilty plea in his Firearms Case would require him pleading guilty "to all of the indictments" (Tr. 6:13-15), the trial court corrected Petitioner:  "You can enter a plea of guilty on this[, i.e., the Firearms Case].  My understanding is that [your counsel,] Mr. Russo told you if you do, [the prosecution] could conceivably use it against you at your murder trial[, i.e., the Retrial of the Murder Case]." (Tr. 6:19-23.)  Thereafter, the following colloquy ensued:

> MR. RUSSO:[5]  More importantly, what I've told my client[, Petitioner], Judge, is that at no point with regards to this particular indictment[, i.e., Firearms Indictment,] have the People ever offered him a plea.  The only plea bargaining discussions have included the murder charge.[6]  There has been no offer from the People I have told my client.
>
> THE COURT:     I'll talk about just the [F]irearm[s] [C]ase.  Is there an offer on the [F]irearm's [sic] [C]ase?
>
> MR. BARRY:     There is not, Your Honor.  But as the Court is aware, as I was not there personally, the [Petitioner] did testify in the [M]urder [C]ase and denied ever possessing a handgun.  Based on conference and discussing this case with the assistant, there would be the possibility that he would subject himself to a possible perjury charge if he were to plead guilty to the [F]irearm's [sic] [C]ase based on that.

---

[5]  Mr. Russo was defense counsel, and Mr. Barry was the prosecutor.

[6]  Apparently, there had been a conference with the trial court "to discuss the possibility of whether all of [Petitioner's] cases c[ould] be resolved by way of a global disposition" but that Petitioner was not interested in such a resolution.  (Tr. 3:24-4:6.)

MR. RUSSO:     So the answer is there is no offer from the People?

MR. Barry:     That's correct.

THE COURT:     I will make an offer on the [F]irearm's [sic] [C]ase.

MR. RUSSO:     Okay.  I've told my client, Judge, that he would have to plead guilty to the charges and rely on the Court.  The Court, unlike the People, don't engage in plea bargaining which requires reductions and the like.

MR. BARRY:     Also, just to clarify my understanding, and I'm not sure whether or not there would have been an offer in this case, was that he would not take an offer on this because of the problem it would create with him taking the stand in his homicide trial[, i.e., the Retrial,] if that were to go forward.

MR. RUSSO:     No, my –

THE COURT:     If that ever went forward again.

MR. RUSSO:     My advice was that it could cause a problem.  However, my client has wanted from day one to engage in plea negotiations on this particular case.

THE COURT:     If you pled guilty to all four counts of this indictment I'd sentence you to five years consecutive to five years plus three years post-release supervision, for a total of ten years in prison followed by three years of post-release supervision.  And I'd tell you on the record that I'd run a perjury charge, if the[ prosecution] brought it, concurrent or at the same time.  That's my offer on the [F]irearm's [sic] [C]ase.

> THE DEFENDANT: All right.  It would leave open the homicide case[, i.e., the Retrial,] which you know about better than anyone.
>
> MR. RUSSO:     And the narcotics.
>
> THE COURT:     And the narcotics case[, i.e., the Drug Case].  But I'd make you an offer on the narcotics case as well if you asked me to.  Okay.
>
> THE DEFENDANT: All right.  Thank you.
>
> THE COURT:     Yup.

(Tr. 6:24-9:17.)  Petitioner did not accept the trial court's plea offer, but proceeded to trial.

At trial, the prosecution presented testimony from law enforcement witnesses, including Tzimorotas, and from confidential informant Williams, as well as audio and video recordings from William's transactions with Petitioner.  At the conclusion of the prosecution's case, defense counsel moved for trial order of dismissal for failure to prove a prima facie case, which the trial court denied.  (See Tr. 784:8-22, 786:7-8.)

Defense counsel presented testimony from two witnesses: Dyron Elliot and Randy Roland.  Elliot testified that: he knew Williams as a local drug dealer; on July 18, 2011, Petitioner and Williams approached him (Elliot) to purchase a gun; and, he told Williams and Petitioner to come back at a later time, because he knew that Williams was a police informant.  (See Tr. 799:15-18,

800:3-5, 800:12-801:16.)  Roland,[7] Petitioner's stepbrother (see Tr. 821:16-822:2), testified that he knew Williams and Elliot from the neighborhood.  (See Tr. 823:22-824:14, 825:24-826:7.) Thereafter, defense counsel rested and renewed his application for a trial order of dismissal. (See Tr. 849:5-7, 851:4-5.)  The trial court denied the motion. (See Tr. 851:6-11.)  After deliberating (see Tr. 862:13-991:22), the jury convicted Petitioner on all four counts of the Firearms Indictment. (See Tr. 1027:13-1028:4.)

IV.  The Sentence in the Firearms Case

On April 1, 2014, Petitioner was sentenced. (See Sent'g Tr.)  The prosecution requested the maximum sentence permissible under the law.  (See id. at 2:25-5:3.)  In opposition, defense counsel adamantly advocated for leniency in sentencing, explaining:

> MR. RUSSO:    This case, judge, has been pending as you know, since February of 2012. During those two years, I have represented [Petitioner] on all these matters[, i.e., the Murder Case, the Firearms Case, and the Drug Case].  During those two years, [Petitioner] has wanted to enter into plea negotiations on this particular indictment, with the [P]eople, from day one.
> We were never given that opportunity, because of the pending murder case[, i.e., the Retrial], that was also pending during that same time.

---

[7]  Roland was a person of interest in Tzimorotas's investigation into illegal firearm sales in the Copiague area, and, prior to testifying, plead guilty to the sale of a firearm. (Tr. 106:9-18, 828:19-20, 831:14-19.)

In fact, when this matter was pending before Judge Weber two years ago, Judge Weber had even indicated to us that he would consider sentencing my client[,] if he pled guilty to the indictments regarding these two charges, as a youthful offender.

At that time, <u>on the advice of counsel, he did not accept that with Judge Weber because we had the murder case pending, and my concern was that whatever allocution was made, would be used against him in that case</u>.

The point is, judge, this young man should not be punished simply because he could not[,] at the time, engage in plea negotiations. He has no criminal convictions.

I understand through the [Presentence Investigation] that he had some JD cases, when he was a very young man. But at the time that these cases arose, he had no criminal convictions.

Essentially, what is taking place here, judge, is that he exercised his constitutional right to defend himself on a murder case for which a jury could not come to a verdict.

As this court is well aware, the vote of that jury was in his favor on the murder case. To now punish him for a case that the district attorney's office could not prove, I think is unfair.

. . . I would ask the court to show some leniency given the fact that this young man never once said, I'm not engaging in plea negotiations.

He is eligible for youthful offender. As I indicated before, prior judges were willing to consider it. . . .

(Sent'g Tr. 3:19-5:22 (emphasis added).)

The trial court denied defense counsel's youthful offender application. (<u>See</u> <u>id.</u> at 7:12-15.) For each of the four counts upon which Petitioner was convicted, the trial court imposed a sentence of six years' incarceration, followed by three years'

post-release supervision, with: the sentence on Count Two running
concurrent to Count One; the sentence on Count Three running
consecutively to Count One; and the sentence on Count Four running
concurrent to Count Three. (See id. at 7:16-8:12.) Thus,
Petitioner was subject to a total of twelve years' imprisonment.

V.   The Appeal

In December 2015 and through counsel, Petitioner
appealed his conviction and sentence to the Second Department.
(See Appellant Br., ECF No. 9-1 at ECF pp. 267-97.) He raised two
arguments: (1) the prosecution failed to prove his guilt beyond a
reasonable doubt and the verdict was against the weight of the
evidence (see id. at ECF pp. 283-92); and (2) the sentence imposed
was harsh and excessive (see id. at ECF pp. 293-95). Petitioner
did not raise a claim of ineffective assistance of counsel. (See
Appellant Br., in toto.)

The Second Department affirmed the judgment finding: as
to Petitioner's weight-of-the-evidence argument, that the evidence
was "legally sufficient to establish the defendant's guilt beyond
a reasonable doubt;" and, as to Petitioner's harsh-sentence
argument, that the verdict was not against the weight of the
evidence. People v. Yorke, 145 A.D.3d 920, 920-21, 42 N.Y.S.3d
839 (2d Dep't 2016).[8] Petitioner sought leave to appeal to the

---

[8] Also docketed in the instant case at ECF No. 9-1 at ECF pp. 226-
27.

New York State Court of Appeals, which was denied on May 15, 2017. See People v. Yorke, 29 N.Y.3d 1038, 84 N.E.3d 979, 62 N.Y.S.3d 307 (2017).[9]

VI.  Petitioner's Section 440 Motions

Pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 (hereafter, "Section 440"), Petitioner filed two subsequent motions before the trial court to vacate his judgment of conviction and set aside the verdict.

(A)  The First Section 440 Motion and Subsequent History

In his first Section 440 Motion, dated October 23, 2017 and filed pro se (hereafter, the "First Section 440 Motion"), Petitioner argued that defense counsel was ineffective for providing "misadvice" when advising Petitioner not to accept the pre-trial plea offer from the trial judge. (See ECF No. 9 at ECF pp. 64-101.)  In a March 19, 2018 order, the trial court denied the First Section 440 Motion in its entirety (hereafter, the "First Section 440 Decision").  (See id. at ECF pp. 61-63.)  First, it rejected Petitioner's argument "that defense counsel failed to discuss with [Petitioner] a plea offer made by [the trial c]ourt" because in Petitioner's own supporting affidavit, he "admitted . . . that counsel had previously relayed his concerns that any allocution pursuant to a plea to a weapons charge 'had the

_____

[9]  Also docketed in the instant case at ECF No. 9 at ECF p. 44.

11

potential of being used against [Petitioner] in a then-pending murder case.'" (Id. at ECF p. 62.)  Moreover, this admission was corroborated twice on the record, i.e., on February 6, 2014, during trial, and on April 1, 2014, during sentencing.  (See id.)  Thus, from the record "it's clear that advice from defense counsel had been given early on to forego entering a plea of guilty to th[e Firearms I]ndictment in order to effect the ultimate goal of best defending against the murder charge at a future time."  (Id.) Since "what defendant complain[ed] of, only after securing a dismissal of the murder indictment, [wa]s counsel's advice concerning a reasonable strategic choice," Petitioner "failed to demonstrate that counsel's performance fell below 'an objective standard of reasonableness' and . . . fail[ed] to establish that he was denied the effective assistance of counsel." (Id.)

Second, pursuant to C.P.L. § 440.30(4)(d), the trial court found, that it was "apparent from defendant's Sworn Affidavit as well as the minutes of the trial and sentence, [Petitioner] wasn't prevented from accepting the [trial c]ourt's offer except by following the strategic advice of counsel."  (Id. at ECF p. 63.)  Accordingly, Petitioner's "allegation concerning the absence of strategic or other legitimate explanations for counsel's alleged deficient conduct was contradicted."  (Id. (further stating there was "no reasonable possibility that any such allegation is true").)

Third and of relevance here, the trial court concluded that it was constrained by C.P.L. § 440.10(2)(c) to deny Petitioner's First Section 440 Motion because, notwithstanding that "there were sufficient facts appearing on the record to permit a review, on appeal" of Petitioner's claim of ineffective assistance of counsel, Petitioner "unjustifiabl[y] fail[ed] to raise such ground or issue upon an appeal actually perfected by him." (Id. at ECF p. 63 (quoting C.P.L. § 440.10(2)(c)).)

Thereafter, pursuant to C.P.L. §§ 450.15 and 460.15, Petitioner moved the Second Department for leave to appeal the First Section 440 Decision, which was denied by the Appellate Division on August 3, 2018. (See ECF No. 9 at ECF pp. 44-45.) Petitioner then moved, pursuant to C.P.L.R. § 2221, to reargue the First Section 440 Decision (see id. at ECF pp. 48-60), which the trial court denied on September 17, 2018, because it disagreed that it "overlooked or misapprehended either the facts or law in determining the prior motion." (See id. at ECF p. 46.)

(B)   The Second Section 440 Motion and Subsequent History

Undeterred, on December 11, 2018, Petitioner again moved before the trial court for a vacatur of his firearms conviction, once more arguing that counsel provided "misadvice" which constituted ineffective assistance (hereafter, the "Second Section 440 Motion"). (See id. at ECF pp. 5-28.) Finding Petitioner had previously raised the identical claim in his First Section 440

Motion, and was, therefore, barred from raising it again, the court denied the Second Section 440 Motion on January 25, 2019.  (See Second Section 440 Decision, ECF No. 9, at ECF pp. 3-4 (further stating Petitioner was also barred from asserting his ineffective assistance claim "since [he] failed to raise this issue in his direct appeal, and has proffered no justification for his failure to do so" (citations omitted)).)

This Petition followed.

<u>DISCUSSION</u>

I. <u>The Legal Standard</u>

"It is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States."  <u>Ponnapula v. Spitzer</u>, 297 F.3d 172, 182 (2d Cir. 2002).  Pursuant to 28 U.S.C. §2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas court considering a claim that was decided on the merits in a state court proceeding may grant relief only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or" (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §2254(d)(1) & (2).

14

The AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000); see also Virginia v. LeBlanc, 137 S. Ct. 1726, 1729 (2017); McBride v. Perez, No. 13-CV-4792, 2015 WL 5245072, at *8 (S.D.N.Y. June 25, 2015) ("'[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States.'" (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). The requirements set forth by the AEDPA are strictly construed and, by design, erect a barrier to federal habeas relief founded upon the principle that "[s]tate courts are adequate forums for the vindication of federal rights" and are "presumptively competent[] to adjudicate claims arising under the laws of the United States." Burt v. Titlow, 571 U.S. 12, 19 (2013) (internal quotation marks and citation omitted). The AEDPA "'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'" Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 565 U.S. 65, 66 (2011)). Hence, a habeas

corpus petition is not a vehicle to relitigate every issue previously determined in state court. See Herrara v. Collins, 506 U.S. 390, 401 (1993).

Under § 2254(d)(1), applicable here, a state court decision is considered "contrary to" federal law if it either "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." Williams, 529 U.S. at 405-06. "'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" Green v. Travis, 414 F.3d 288, 296 (2d Cir. 2005) (alteration in original) (quoting Williams, 529 U.S. at 412). An "unreasonable application" of federal law occurs where the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Williams, 529 U.S. at 407-08. "The critical point is that relief is available under § 2254(d)(1)'s unreasonable application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question." White v. Woodall, 572 U.S. 415, 427 (2014) (internal quotation marks and citations omitted). Ultimately, "the petitioner bears the burden of proving

by a preponderance of the evidence that his constitutional rights have been violated." Jones v. Vacco, 126 F. 3d 408, 415 (2d Cir. 1997); see also Hawkins v. Costello, 460 F. 3d 238, 246 (2d Cir. 2006).

Assuming a petitioner's claims are cognizable on habeas review, a petitioner must exhaust state court remedies before coming to federal court. Exhaustion of state court remedies requires that a petitioner fairly present the claim in state court, allowing the state court the "'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" Jackson v. Edwards, 404 F.3d 612, 619 (2d Cir. 2005) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" Jones v. Keane, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting Dorsey v. Kelly, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 191-92 (2d Cir. 1982) (collecting cases).

Moreover, a federal court will not review a habeas petition if a petitioner's claims were decided at the state level

on "independent and adequate" state procedural grounds.  Coleman v. Thompson, 501 U.S. 722, 731-32 (1991).  This procedural bar applies even if the state court addressed the merits in the alternative, but decided the claim on independent procedural grounds.  See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).  To obtain review of procedurally barred claims, a petitioner must show either (1) "cause for the default and actual prejudice as a result" or (2) actual innocence.  Coleman, 501 U.S. at 750.

II.  Application

Petitioner asserts that he is entitled to habeas relief because defense counsel provided ineffective assistance when he misadvised Petitioner not to plead guilty to the firearm charges before trial.  (Petition at ECF p. 5.)  Petitioner argues that defense counsel advised him to reject a favorable plea offer, which included youthful offender status, because counsel believed that Petitioner's guilty plea would negatively affect his then-pending Retrial in the Murder Case, with his plea allocutions being available to use against him at the Retrial.  (See id.)  Petitioner contends that his youthful offender status would have caused the plea in the Firearms Case to be sealed; hence, it could not be used against him in the subsequent Retrial.  (Id.)  As discussed supra, Petitioner raised his ineffective assistance claim in both of his Section 440 Motions, which the trial court rejected in ruling on both motions.  The argument fares no better here.

18

As an initial matter, this Court is procedurally barred from reviewing Petitioner's habeas claim of ineffective assistance of counsel because that claim was decided at the state level on "independent and adequate" state procedural grounds. Coleman, 501 U.S. at 729-33; see also, e.g., Michigan v. Long, 463 U.S. 1032, 1041 (1983); Nowakowski v. New York, No. 13-CV-3709, 2018 WL 6421056, at *6 (E.D.N.Y. Dec. 6, 2018) (stating claims that a state court denied based upon an adequate and independent state procedural rule bars federal habeas review). A procedural rule is adequate if it is "'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (citation omitted). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case" by "'clearly and expressly' stat[ing] that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 261-63, 265 n.12 (1989) (citations omitted). Further, a state court's reliance on an independent and adequate procedural bar forestalls habeas review even if the state court also rejected the claim on the merits in the alternative. See, e.g., id. at 264 n.10 (explaining that "a state court need not fear reaching the merits of a federal claim in an alternative holding" where it "explicitly invokes a state procedural bar rule as a separate basis for [its] decision"); Glenn v. Bartlett, 98 F.3d 721, 725 (2d Cir. 1996). It is only where a petitioner can

demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that the failure to consider the claim[] will result in a fundamental miscarriage of justice" that a federal habeas court may review a procedurally barred claim.  Coleman, 501 U.S. at 750; see also Terrell v. Kickbush, No. 17-CV-7027, 2019 WL 3859512, at *5 (E.D.N.Y. Aug. 16, 2019).

As discussed supra, in this instance, relying upon C.P.L. § 440.10(2)(c), which dictates that a "court must deny a [Section 440] motion to vacate a judgment" when a defendant has unjustifiably failed to previously raise the challenged issue upon a perfected appeal, the trial court ruled it was "constrained to deny" Petitioner's First Section 440 Motion.  (First Section 440 Decision, ECF No. 9 at ECF p. 63 (quoting C.P.L. § 440.10(2)(c)); see also, e.g., Aparicio v. Arutz, 269 F.3d 78, 91 (2d Cir. 2001) ("New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal." (citing C.P.L. § 440.10(2)(c)); Acevedo v. Capra, No. 13-CV-5579, 2014 WL 1236763, at *12 (E.D.N.Y. Mar. 25, 2014) (in denying a § 2254 petition, recognizing that New York "state law requires claims to be raised on direct appeal").  Thus, given the trial court's clear and express reliance upon C.P.L. § 440.10(2)(c), a well-established state procedural bar rule, as an independent and adequate basis for denying Petitioner's First

Section 440 Motion, habeas review of Petitioner's ineffective assistance claim is forestalled.  (See, e.g., Second Section 440 Decision at ECF p. 3 (stating Petitioner's First Section 440 Motion was denied because Petitioner "was procedurally barred from raising [his ineffective assistance] argument since he failed to raise it on his direct appeal")); see also Coleman, 501 U.S. at 735 n.1 (noting a federal habeas court may not review a habeas claim where petitioner "failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred").

        To overcome this procedural bar to habeas review, the Petitioner must "show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." Aparicio, 269 F.3d at 90 (citing Coleman, 501 U.S. at 748-50).  Petitioner has done neither; nor does the Court's review of the state court record uncover either.  See, e.g., Bellezza v. Fischer, No. 01-cv-1445, 2003 WL 21854749, at *18 (E.D.N.Y. Aug. 6, 2003) ("Because the required showing of cause and prejudice has not been made with respect to [petitioner]'s procedurally defaulted . . . claim, that claim should be dismissed without reaching the merits."); see also id. at *10 (stating that, while "a district court must consider a pro se litigant's habeas corpus

petition with some liberality, the petitioner still bears the burden of proof" throughout the habeas proceeding) (internal citation omitted).   Accordingly, no review of Petitioner's ineffective assistance claim is warranted.

Even if the court were to review the state court's Section 440 Decisions, "us[ing the] 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt," Burt v. Titlow, 134 S. Ct. 10, 13 (2013) (quoting Cullen v. Pinholster, 563 U.S. 170, 190 (2011)), the Court would find that the trial court's alternative basis for denying the First Section 440 Motion, i.e., that Petitioner had failed to demonstrate that his trial counsel's performance fell below "an objective standard of reasonableness" and, therefore, "failed to establish that he was denied the effective assistance of counsel", was not contrary to, or an unreasonable application of, clearly established federal law.   (First Section 440 Decision at ECF p. 62); see also Strickland v. Washington, 466 U.S. 668.

To establish that he was denied effective assistance of counsel, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness," Strickland, 466 U.S. at 688 (1984), and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. As to the first prong, i.e., the deficiency prong, the inquiry "must be

whether counsel's assistance was reasonable considering all the circumstances." Id. at 688. The "court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct" and must "determine whether the [challenged acts or omissions] were outside the wide range of professionally competent assistance." Id. at 690. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. Even if a petitioner overcomes this presumption, he must still prove the second prong, i.e., the prejudice prong, by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," id., and it "requires a substantial, not just conceivable, likelihood of a different result." Cullen, 563 U.S. at 189 (internal quotation marks and citation omitted). Moreover, in the context of a review under § 2254(d)(1), "it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly." Bell v. Cone, 535 U.S. 685, 698–99 (2002). Rather, the petitioner must show "that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner."

Id.  Here, Petitioner is unable to make the requisite showings.

Petitioner contends that he was misadvised by counsel to reject a favorable plea offer that would have included youthful offender status. (See Petition at ECF p. 5.)  Not so.  In the context of plea negotiations and plea offers, as was the case here, "counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 566 U.S. 134, 145 (2012).  Additionally, "defense counsel 'must give the client the benefit of counsel's professional advice on this crucial decision' of whether to plead guilty." Purdy v. United States, 208 F.3d 41, 44 (2d Cir.2000) (quoting Boria v. Keane, 99 F.3d 492, 497 (2d Cir.1996)).  An attorney "should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." Purdy, 208 F.3d at 45.  "[T]he ultimate decision whether to plead guilty must be made by the defendant," and a "lawyer must take care not to coerce a client into either accepting or rejecting a plea offer." Id. at 45.

Here, defense counsel's plea advice in the Firearms Case must be considered within the context of the impediment of Petitioner's then-pending Retrial, including the possibilities of exposing Petitioner to perjury charges and undermining his credibility.  Defense counsel properly: communicated the trial

24

judge's plea offer to Petitioner; considered the risks involved
with pleading guilty and allocuting to the charges in the Firearms
Case; and, made the strategic decision to advise his client,
Petitioner, not to plead guilty.  Given these circumstances,
evaluating trial counsel's performance "in view of his
perspectives at the time of his alleged error" establishes that he
"acted within the wide range of reasonable professional
assistance" when advising Petitioner to not accept the trial
court's plea offer.  Strickland, 466 U.S. at 687-89.  This is
precisely what the trial court concluded in its First Section 440
Decision.  (See First Section 440 Decision at ECF p. 62 ("[W]hat
[Petitioner] complains of, only after securing a dismissal of the
murder indictment, is counsel's advice concerning a reasonable
strategic choice." (citations omitted)).)

          As to the prejudice prong of the Strickland analysis, to
demonstrate prejudice caused by ineffective assistance "where a
plea offer has lapsed or been rejected because of counsel's
deficient performance, defendants must demonstrate a reasonable
probability they would have accepted the earlier offer had they
been afforded effective assistance of counsel."  Frye, 132 S. Ct.
at 1409.  Petitioner cannot make such a showing.  He tries to do
so by arguing that his youthful offender adjudication would have
been sealed and, thus, his plea allocution in the Firearms Case
would not have been used against him in the Retrial.  Petitioner's

argument is speculative and, in any event, based upon a false premise.  Under New York law, the prosecution is able to cross examine a defendant regarding underlying facts and conduct of his youthful offender adjudication subject to a pre-trial Sandoval ruling.  See People v. Sandoval, 34 N.Y.2d 371 (1974); see also People v. Duffy, 36 N.Y.2d 258, 265 (1975), cert. denied, 423 U.S. 861 (1975).  Indeed, at most, the record reflects the trial court's willingness to consider Petitioner's youthful offender status when sentencing him, but not a definitive agreement to do so.  In any event, Petitioner had already exposed himself to a possible perjury charge prior to the trial court's plea offer.  In sum, Petitioner is unable to demonstrate that, but for defense counsel's advice, he would have pleaded guilty prior to the Firearms Trial; as such, he cannot demonstrate prejudice.

Hence, if the Court were not barred from reviewing Petitioner's habeas claim, it would conclude that the state court's determination that Petitioner failed to establish ineffective assistance of counsel was neither contrary to nor an unreasonable application of Strickland and was not based upon an unreasonable interpretation of the facts.  See 28 U.S.C. § 2254(d)(1) & (2).

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

(A)  Petitioner's Petition (ECF No. 1) is **DENIED**;

(B)   The   Court   declines   to   issue   a   certificate   of appealability  because  the  Petitioner  has  not  made  a substantial  showing  that  he  was  denied  a  constitutional right.  See 28 U.S.C. § 2253(c)(2);

(C)   The Court certifies that any appeal of this Order would not be taken in good faith, and thus in forma pauperis status  is  denied  for  the  purposes  of  any  appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962); and

(D)   The Clerk of the Court is to:

(1)   close this case; and

(2)   mail  a  copy  of  this  Order  to  the  pro se litigant, placing the notation "LEGAL MAIL" on the mailing envelope.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  November _3rd_, 2021
         Central Islip, New York